<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LIFECELL CORPORATION,** | Civil Action No. 15-6701 (CCC) |
| Plaintiff. | |
| v. | |
| **LIFENET HEALTH,** | <u>OPINION</u> |
| Defendant. | |

<u>**FALK, U.S.M.J.**</u>

This is a declaratory judgment case relating to patent infringement. Plaintiff, LifeCell Corporation, filed a Complaint seeking a declaration of non-infringement of United States Patent No. 9,125,971 ("the '971 patent"), which is held by Defendant LifeNet Health. As is explained more herein, this is another round in an ongoing patent-related fight between the two companies, which continues to this day in Virginia.

Defendant LifeNet has moved to dismiss the Complaint for lack of federal subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, to transfer the case to the United States District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1404(a). No argument is necessary. Fed. R. Civ. P. 78(b). For the reasons stated below, the motion to transfer venue is **GRANTED**, and the

case is transferred to the United States District Court for the Eastern District of Virginia.[1]

## BACKGROUND[2]

Plaintiff LifeCell is a Delaware corporation with its principal place of business in New Jersey. LifeCell is a regenerative medicine company that makes and sells soft tissue grafts known as reconstructive or regenerative tissue materials. Defendant LifeNet is a Virginia company with its principal place of business in Virginia. LifeNet is a nonprofit corporation that provides transplant solutions, from tissue and organ procurement to bio-implant technologies and cellular therapies. Relevant here, LifeNet is the assignee of two affiliated patents: (1) United States Patent No. 6,569,200 ("the '200 patent"); and (2) the '971 patent. The claims of both the '200 and '971 patents are directed to "plasticized soft tissue grafts and methods of making and using same."

In September 2013, LifeNet sued LifeCell in the United States District Court for the Eastern District of Virginia, alleging that LifeCell infringed the '200 patent by making and selling certain soft tissue grafts, *see LifeNet Health v. LifeCell Corp.*, Civ. A. No. 13-CV-486-HCM-DEM (E.D. Va.) ("*LifeNet I*"). During the pendency of that case,

---

[1] The Court does not need to resolve Defendant's Rule 12 arguments, which if necessary would be accomplished by way of Report & Recommendation. See 28 U.S.C. § 636(b) (1) (B). Because a request to transfer pursuant to Section 1404(a) is a non-dispositive motion, see, e.g., Siemens Fin. Servs., Inc. v. Open Advantage MRI II, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008), the Court issues an Opinion subject to the clearly erroneous standard of review.

[2] The parties know the facts well. The background is limited to what is necessary to decide the motion and is drawn from the pleadings, briefs, and declarations submitted. Citations are omitted.

the parties engaged in settlement negotiations, and, in order to facilitate open communication, executed a "Confidentiality and Non-Disclosure Agreement in Connection with Settlement Discussions" (referred to as "the Non-Disclosure Agreement"). The case did not ultimately settle.

On November 18, 2014, after a ten-day jury trial before the Honorable Henry C. Morgan, Jr., U.S.D.J., a federal jury found the '200 patent valid and infringed by LifeCell, resulting in a $35 million verdict. In addition, District Judge Morgan denied LifeCell's post judgment motions.

On April 3, 2015, LifeCell appealed *LifeNet I* to the United States Court of Appeals for the Federal Circuit, where it remains pending.

On September 8, 2015, the United States Patent and Trademark Office granted LifeNet a second patent—the '971 patent. The same day the USPTO granted the patent, LifeCell filed its original Complaint in this Court, seeking, pursuant to the Declaratory Judgment Act §§ 2201-02, a declaration that LifeCell did not infringe the '971 patent.

On October 21, 2015, LifeNet filed a second lawsuit in the Eastern District of Virginia. See *LifeNet Health v. LifeCell Corp.*, Civ. A. No. 15-CV-461-HCM-DEM (E.D. Va.) ("*LifeNet II*").[3] The second case is based on the allegation that LifeCell violated the provisions of the Non-Disclosure Agreement entered into in connection with settlement discussions in *LifeNet I*. Specifically, LifeNet contends that LifeCell relied on

---

[3] The Court refers to the different Virginia lawsuits with Roman numerals; the parties have not described them this way. There is no meaning to this description beyond

and disclosed confidential information from the settlement discussions when it filed its Complaint in this case in New Jersey. *LifeNet II* has been assigned—as *LifeNet I* was—to Judge Morgan.

Following the filing of an Amended Complaint, on November 30, 2015, LifeNet filed the present motion to dismiss or transfer. LifeNet alleges that the Complaint should be dismissed because there is not yet a "justiciable controversy" between the two companies relating to the '971 patent, depriving the Court of subject matter jurisdiction. In the alternative, LifeNet requested a Section 1404 transfer to the Eastern District of Virginia where the *LifeNet I* jury trial occurred and where *LifeNet II* is currently pending. According to LifeNet, LifeCell commenced the lawsuit in New Jersey not because its place of business is here, but to dodge further litigation in Virginia, a forum it supposedly wants to avoid.

LifeCell opposes both motions. It agrees that the '971 and '200 patents are "in the same family of patents," which in its view supports the notion that there *is* a case or controversy. In other words, since the two patents *are* closely related—and in view of the parties' litigation history including the jury verdict—LifeCell is appropriately seeking a judicial declaration that it does *not* infringe the '971 patent. On the question of transfer, LifeCell contends that its choice of a New Jersey forum is more convenient and should not be disturbed, and that transfer does not benefit judicial economy or efficiency or the interests of the relevant parties and witnesses.

---

ease of writing. It is not meant to suggest that the cases have a deeply rooted connection.

\*   \*   \*

## **Summary**

As is explained more below, a transfer to the District of Virginia is appropriate in this case. The parties started their patent dispute in Virginia and that's where it should finish.

Section 1404 provides the Court with discretion, in the interests of justice and for the benefit of the parties, to determine which district is best positioned to hear a dispute. District Judge Morgan in Virginia conducted a lengthy jury trial relating to the '200 patent and is obviously well-versed in the science associated with the patent and the similar '971 patent. Indeed, LifeCell admits that the technology involved in the jury trial is related to the technology in this case. District Judge Morgan is also presiding over the lawsuit relating to the Non-Disclosure Agreement—*LifeNet II*— which implicates disclosures in the pleading that started this New Jersey case. It does not seem practical to have two different District Judges dedicate the resources necessary to address the same complicated patent issues. Under the circumstances, transfer also promotes the goal of federal patent uniformity, an important principle in the federal patent scheme. Most importantly, the specific Section 1404 factors make it clear the case belongs in Virginia; i.e., the third-party inventors of the '971 patent reside there; the District Court in Virginia is already handling a related lawsuit (*LifeNet II*), conserving judicial resources; and the federal case management statistics suggest the Eastern District of Virginia is relatively less congested than New Jersey.

**DISCUSSION**

A. **Transfer Pursuant to Section 1404(a)**

28 U.S.C. § 1404(a) provides federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "[f]or the convenience of the parties and witnesses, "or in "the interests of justice." Id. The purpose of the federal transfer statute is to "prevent the waste of 'time, energy and money' and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). The decision to transfer is a highly discretionary one. See, e.g., Superior Oil v. Andrus, 656 F.2d 33, 42 (3d Cir. 1981) ("[A] district court has broad discretionary powers under [Section 1404(a)] to transfer any civil action to any other district where it might have been brought.").

"There is no definitive formula or list of factors to consider when deciding a motion to transfer." Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc., 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010). However, the Third Circuit in Jumara v. State Farm Ins.Co., 55 F.3d 873 (3d Cir. 1995), has articulated certain "public" and "private" interests implicated by Section 1404(a). Private interests include but are not limited to: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books

and records. See id. at 879. Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. Id.

The moving party bears the burden of establishing that the proposed transferee forum is more convenient for the parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 643 (D.N.J. 2004). And courts must "determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." Id.; see also Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003). The "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000).

**B.     Section 1404(a) Transfer is Appropriate in this Case**

In Virginia, there was a trial and a substantial jury verdict relating to a patent in the "same family" as the patent in this case involving the same parties. The patents in *LifeNet I* and this case are alleged to involve the same general issues and technology. And District Judge Morgan in the Eastern District of Virginia is familiar with the technology at issue and presided over the *LifeNet I* jury trial, not to mention the entirety of the case, which included discovery and a *Markman* opinion on a "family" patent. Judge Morgan is also presiding over the *LifeNet II* lawsuit that bleeds across the three

7

cases binding them all together. On a practical level, the notion that two different judges should be simultaneously evaluating complex patent questions arising out a dispute between the same parties, similar patents and similar technology is contrary to the concept of judicial economy and exactly the type of situation the transfer statute is designed to prevent.

In addition, as is explained below, the public and private factors involved in a traditional Section 1404 analysis strongly compel transfer of this case to where it belongs—Virginia.[4]

### 1. Private Interests

#### (i) Choice of Forum

A plaintiff's choice of forum is entitled to consideration. Shutte v. Armco Stell Co., 431 F.2d 22, 24 (3d Cir. 1970). This is particularly true when a plaintiff selects its home forum. Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1987). However, the plaintiff's selected forum is not dispositive. See, e.g., Am. Tel. & Telegraph Co. v. MCI Commcs. Corp., 736 F. Supp. 1294, 1305 (D.N.J. 1990).

LifeCell claims that the case should remain in New Jersey because it is a New Jersey company; employs New Jersey residents; has its research and development teams in New Jersey; and because it ships its products from New Jersey.

---

[4] The transfer statute limits the ability to transfer to a district where the case "might have been brought." Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). There is no dispute that this case could have been filed in the Eastern District of Virginia.

It might seem that LifeCell selected an appropriate forum that should be entitled to deference. However, the deference generally afforded to a plaintiff's forum is lost when the lawsuit that is filed is regarded as "anticipatory suit." See Church & Dwight v. Mayer Labs., 2010 WL 3907038, at *7 (D.N.J. Sept. 28, 2010) (Wolfson, J.). In the context relevant here, "courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." Id. (citing Am. South Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)). Such suits are regarded as "anticipatory" and dramatically lessen the deference afforded to a plaintiff's chosen forum. See id.

This Court is not in a position to conclusively determine LifeCell's motivations at the time they filed this case in New Jersey. But it is true that LifeCell filed suit the same day that '971 patent issued. Moreover, it is alleged that LifeCell did this because it was aware, from the proceedings in *LifeNet I*, of LifeNet's "enforcement plan" for protecting its other patents, including the '971, which seemingly contemplated further litigation in Virginia.[5] In other words, LifeCell anticipated, based on what had occurred prior, that it would be sued in Virginia on the '971 patent, so it sued in New Jersey. One cannot fault LifeCell for proceeding that way. But it does suggest that this action was effectively an

---

[5] The Court is aware of the irony involved in LifeNet claiming this is an anticipatory suit by LifeCell, which would suggest a filing was forthcoming in Virginia, while at the same time contending that the LifeCell's anticipation was illusory because there is no ripe dispute for purposes of subject matter jurisdiction. However, that is really an argument for the motion to dismiss. For purposes of transfer, the facts sufficiently support the conclusion that this may have been filed as an anticipatory suit decreasing the

anticipatory suit when procedural developments are considered—e.g., a jury verdict in Virginia, knowledge of LifeNet's enforcement plan with respect to the '971 patent involving potential litigation in Virginia, and filing suit in a different forum the day the '971 patent issued. Of course, there is no suggestion that LifeCell did anything wrong; and no such inference is drawn. But based on the facts that have occurred and the prior relationship between the parties and the intertwined nature of the various litigations, a reasonable conclusion is that this was an anticipatory lawsuit for purposes of securing a New Jersey forum. Accordingly, the Court affords very minimal deference to LifeCell's choice of forum.

### (ii) Convenience of Witnesses & Compulsory Process

Convenience of witnesses and access to sources of proof are important considerations in a Section 1404(a) analysis. See Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 331 (D. Del. 2009). In deciding a motion to transfer, courts often distinguish between party and non-party witnesses. See Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 329 (D.N.J. 1995). Party witnesses carry less weight because they are presumed as willing to testify in either forum, even if it may be inconvenient. See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 534 n.19 (D.N.J. 2000). Non-party witnesses, on the other hand, may be compelled to testify only by the subpoena power of the federal courts. See Fed. R. Civ. P. 45(b)(2). Therefore, compulsory process over non-party witnesses has been referred to

---

deference given to Plaintiff's chosen forum.

as the <u>single</u> <u>most</u> <u>important</u> <u>factor</u> in a Section 1404 analysis. See <u>Teleconference Sys.</u>, 676 F. Supp. 2d at 333 (citing <u>Genetech, Inc.</u>, 566 F.3d 1338 (Fed. Cir. 2009)); <u>see also</u> <u>LG Elecs., Inc. v. First Int'l Computer, Inc.</u>, 138 F. Supp. 2d 574, 590-91 (D.N.J. 2001).

 LifeNet has demonstrated that Virginia is clearly the more convenient and appropriate forum with respect to this factor. The parties' books and records and the convenience of their employees cancel each other out and do not warrant discussion. Instead, the issue turns on non-parties.

 LifeNet identifies Lloyd Wolfinbarger, Jr., Robert K. O'Leary, and Billy G. Anderson as the inventors of the '971 patent. Mr. Anderson is deceased. Messrs. Wolfinbarger and O'Leary are no longer employees of LifeNet and are not under the company's control; both, however, <u>reside in the Eastern District of Virginia</u>. The ability to subpoena these individuals strongly augurs in favor of transfer to Virginia. This is especially so because apparently <u>subpoenas were required for both doctors in the *LifeNet I* proceedings, including a "court ordered man-hunt</u>." On top of that, it has been stated that Dr. O'Leary (and his wife) suffer from "chronic illness" and that Dr. Wolfinbarger "disappeared . . . just prior to the trial." Based on what occurred previously, compulsory process is not an illusory concern in this case. And it is reasonable to assume that court process and potentially court involvement may be necessary with respect to the inventors of the '971 patent. This is outside the authority of this Court and a critical fact weighing in favor of transfer.

In response, LifeCell downplays the inventors' importance, noting that they eventually participated by videotape in *LifeNet I*. Perhaps, but this Court lacks authority over these Virginia-based witnesses, and presupposes how the District Court would treat the inventors in connection with this case. The fact is that they are important non-party witness who are not under the control of any party and reside in the Eastern District of Virginia. To the contrary, LifeCell fails to identify any third-parties that would be unavailable for trial in Virginia. Indeed, the only non-party LifeCell mentions is Gabriella Dahlgren, a former staff scientist no longer employed by the company; however, Dr. Dahlgren voluntarily appeared for trial in *LifeNet I*.

The availability of compulsory process for the inventors of the '971 patent overwhelmingly weighs in favor of transfer to the Eastern District of Virginia. Absent a transfer to the Eastern District of Virginia, this Court may be forcing a case to proceed to trial without two of the most important witnesses in the case.

### (iii) Additional Private and Public Considerations[6]

As has been discussed above, it is impossible to ignore that *LifeNet II* is pending with the same parties before the same District Judge in Virginia that presided over *LifeNet I*, and that those cases have some practical overlap with the present case. The

---

[6] Private factors such as the Defendant's choice of forum are either obvious (the Eastern District of Virginia) or otherwise not compelling on the facts that have been presented—e.g., books are records are likely to be located in both forums, and the parties have a disagreement where the claims arose, which is not surprising since LifeNet contends that no claim exists at this time and that subject matter jurisdiction is lacking. No persuasive showing has been made with respect to these issues.

cases are not the same, and LifeCell is correct that a patent infringement case involves different considerations generally from a breach of contract case. Nor does the Court necessarily assume that this case would be consolidated with *LifeNet II* in Virginia. But, the technology is the same; the District Judge in Virginia is the same; and *LifeNet II* is a pending lawsuit filed in Virginia arising out of settlement discussions that occurred in Virginia and a contract created in Virginia.[7]

LifeCell's position is that the Eastern District of Virginia's experience with these patents should essentially be ignored, citing Federal Circuit case law that rejects the notion that "once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation . . . in that venue." In re Verizon Bus. Net. Servs., 635 F.3d 559, 562 (Fed. Cir. 2011); see also In re Morgan Stanley, 417 Fed. Appx. 947 (Fed Cir. 2011). The Court disagrees.

Both Verizon and Morgan Stanley dealt with mandamus petitions relating to denial of transfer motions. In both cases, the district court refused to transfer cases to clearly more convenient and appropriate districts, choosing instead to keep the cases where they were filed—despite no connections to the forums other than the respective courts' historical involvement with similar patents. Id. at 562; Id. at 949-50.

---

[7] To be clear, transfer is not being granted merely on account of the pending *LifeNet II* litigation. It certainly seems beneficial to have all the litigation between the parties occur in a single forum before a single judge. And LifeNet contends that *LifeNet II* was required to be filed in Virginia based on the contract at issue in that case; naturally LifeCell disputes that. But again, these are ancillary facts supporting transfer and not the driving force behind the decision.

This is a different case. Here, the Court has explained that the convenience of the parties and witnesses warrants transfer, and that LifeCell's choice of forum is neutralized. Indeed, the consideration of witnesses and compulsory process demonstrates why this case should be transferred to a forum that can, if it wishes, enforce subpoenas issued to crucial third-parties—the inventors of the '971 patent.

Unlike Verizon and Morgan Stanley, the transfer determination here is *not* based solely on the District Judge's familiarity with the technology at issue. It is based on the totality of the circumstances and the interests of justice, which while it accounts for District Judge Morgan's expertise also includes an appropriate weighing of the interests of the parties and witnesses involved. This case is more analogous to those that recognize that traditional transfer factors should be considered along with judicial economy; recent experience with a patent; and a current, pending matter involving the same technology (albeit a different legal theory). See, e.g., In re Vistaprint Ltd., 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (denying mandamus and stating that the "district court properly considered both its previous experience construing claims of the patent at issue and co-pending litigation before the district court involving the same patent and underlying technology").

In light of the availability of preferable, appropriate alternative forum, it is almost inconceivable to imagine this case proceeding in New Jersey when this Court is effectively powerless to compel the participation of the inventors of the '971 patent. Such is the importance of compulsory process, especially here when the witnesses at

issue were uncooperative during the pendency of *LifeNet I*. LifeCell simply cannot overcome this compelling decision point. The interests of justice and the convenience of the parties mandate transfer to Virginia.[8]

## CONCLUSION

For the reasons provided above, Defendant's motion to transfer [ECF No. 29] is **GRANTED**. Pursuant to 28 U.S.C. § 1404(a), this case is transferred to the United States District Court for the Eastern District of Virginia. The Clerk is requested to take no action on this Opinion and the accompanying Order for 14 days. See L. Civ. R. 72.1c(1)(C).


                                                  s/Mark Falk
                                                  **MARK FALK**
                                                  **United States Magistrate Judge**

**DATED: February 9, 2016**

---

[8] New Jersey is also a more congested district than the Eastern District of Virginia, which supports transfer—specifically, New Jersey District Judges each have nearly 600 pending cases; Judges in the Eastern District of Virginia have approximately 300, half the load of this District's Judges. See Federal Case Management Statistics, June 2015, New Jersey (Def.'s Ex. 7); Federal Case Management Statistics, June 2015, Eastern District of Virginia (Def.'s Ex. 8). LifeCell suggests the disparity in the number of pending cases is because the Eastern District of Virginia has a reputation of being a "rocket docket." (Pl.'s Br. 26.) Regardless, it should be noted that, for the 12-month period ending September 30, 2015, the District of New Jersey is third in patent case filings nationwide. See Table C-7, U.S. District Courts, Intellectual Property Cases, September 30, 2015.